P. S. MOUCHAS v. FRANK STOUTAMIRE, as Sheriff

4 So. (2nd) 459

En Banc

Opinion Filed October 31, 1941
Rehearing Denied November 24, 1941

*H. O. Pemberton,* for Petitioner;

*J. Tom Watson,* Attorney General, *Lawrence A. Truett,* Assistant Attorney General, and *Tiffany Turnbull,* Special Assistant, for Respondent.

WHITFIELD, J.—A writ of habeas corpus was issued on a petition alleging that the petitioner

". . . is being unlawfully detained by the respondent, Frank Stoutamire as Sheriff of Leon County, Florida, under and by virtue of a warrant for the arrest of your petitioner issued by the Honorable James C. Gwynn, County Judge of Leon County, Florida, in words and figures as follows:

" 'WARRANT

" 'In Court of County Judge, State of Florida

" 'STATE OF FLORIDA v. P. S. MOUCHAS

" 'LEON COUNTY

" 'In the name of the State of Florida, to the Sheriff or Any Constable of said County:

" 'WHEREAS, R. W. ASHMORE, JR., has this day made oath before me that on the 2nd day of October, 1941, A.D., in the County Aforesaid, one P. S. Mouchas without having or obtaining an occupational license as required by Sec. 23 of c. 20956, Laws of Florida, Acts of 1941, did operate for profit a place, to-wit: a restaurant known as the Silver Slipper, in which he served meals to the public and for which those served paid him; and in which was located a coin operated phonograph that any person could play by depositing a coin in same; and in which there was a hall or corridor between two rows of small dining rooms and leading to the main dining room that was large enough for several couples to dance therein and in which he did permit dancing, no charge being made for the privilege of dancing and no admission fee or cover charge of any kind being made for the use and enjoyment of the said place and its facilities;

" 'contrary to the statute in such cases made and provided and against the peace and dignity of the State of Florida;

" 'There are, therefore, to command you to arrest instanter the said P. S. Mouchas and bring him before me to be dealt with according to law.

" 'Given under my hand and seal this 2nd day of October, 1941.

" '(Signed) James C. Gwynn (SEAL)
" 'County Judge, Leon County' "

". . . Petitioner represents unto the Court that he has not violated any law of the State of Florida and that said warrant fails to state any violation of law by

your petitioner and is wholly insufficient to warrant the arrest and detention of your petitioner for the reason that said Sec. 23 of c. 20956, Laws of Florida, Acts of 1941, reading in part: 'Every person who operates for profit any place where dancing is permitted or entertainment such as variety programs or exhibitions is provided for a charge, shall pay a license tax of $100.00' does not apply to a place where dancing is permitted unless a charge is made for the privilege of dancing, and it affirmatively appears from said warrant that your petitioner does not make any charge for the privilege of dancing at the place operated by him and described in the said warrant."

The Attorney General moved that petitioner be remanded.

Sec. 23, c. 20956, Acts of 1941 is as follows:

"Every person who operates for profit any place where dancing is permitted or entertainment such as variety programs or exhibitions is provided for a charge, shall pay a license tax of $100.00. The license required by this Section shall be in addition to any other license required by law and the operation of such a place as herein described shall not be construed to be incidental to some other business; provided that a license may be issued for one night only, upon the payment of twenty-five dollars, but in such cases the Tax Collector must write across the license the words 'Good for one night only.' Provided further that this section shall not apply to entertainment given for charitable purposes, the proceeds of which are given to local charities; provided further that this section shall not apply to any place operated as a theatre or moving picture show only; provided fur-

ther that this section shall not apply to hotels paying an occupational tax provided for in Section 21."

The statute may and does require the operator of a place *for profit* to pay the same separate license tax for merely *permitting* dancing in the place operated for profit, as is required when *entertainment* such as variety programs or exhibitions is *provided for a charge* in the place operated *for profit.* Certain exceptions are stated in the statute. See Levy v. Collins, Tax Collector, 143 Fla. 619, 197 So. 522.

The intent and meaning of the quoted statute are that every person who operates *for profit* any place where *dancing is permitted* (with stated exceptions) shall pay an additional license tax of $100.00, or every person who operates *for profit* any place where entertainment such as variety programs or exhibitions *is provided for a charge* (with stated exceptions) shall pay an additional license tax of $100.00. The statute does not apply in the exceptional cases stated in the statute.

The statutory intent is that every person (with stated exceptions) who operates *for profit* any place where dancing is *permitted,* shall pay an additional license tax of $100.00, whether or not a charge be made for dancing at the place operated for profit. Dancing is usually accompanied by music. The warrant in this case alleges that a phonograph is located in the place operated for profit by petitioner, in which place he permitted dancing, and music may be supplied by or for dancers by depositing a coin in the phonograph. Besides this, meals are served in the place; and the music and dancing add to the attractions at the place to enhance the profits from the serving of meals in the place. The words "for a

charge" contained in the statute are a part of, and follow the provision "or entertainment such as variety programs or exhibitions is provided" while the preceding clause relates to dancing being *permitted* whether for a charge or not at the place operated by the petitioner for profit.

The petitioner will be remanded.

BROWN, C. J., CHAPMAN, THOMAS and ADAMS, J. J., concur.

TERRELL and BUFORD, J. J., dissent.

BUFORD, J., dissenting.—I cannot agree with the construction placed on the language of the statute (Sec. 23 of c. 20956, Acts of 1941) in the opinion prepared by Mr. Justice WHITFIELD.

In the case of Levy v. Collins, 143 Fla. 619, 197 Sou. 522, we had under consideration Sec. 23 of c. 18011, Acts of 1937, and, on consideration of petition for rehearing, said:

"It is the contention of the appellant that the section of the statute, *supra*, which reads: 'Section 23. Every person who operates for a profit any place where dancing is engaged in or entertainment such as variety programs or exhibitions, is provided, shall pay a license tax of $100.00. The license required by this section shall be in addition to any other license required by law and the operation of such a place as herein described shall not be construed to be incidental to some other business; provided that a license may be issued for one night only, upon the payment of twenty-five dollars, but in such cases the Tax Collector must write across the license the words 'Good for one night only.' Provided, further, that this section shall not apply to entertainments given

for charitable purposes, the proceeds of which are given to local charities; provided further that this section shall not apply to any place operated as a theatre or moving picture show only; provided, further, that this section shall not apply to hotels paying an occupational tax as provided for in section 21, should be construed to apply only to those places of business where a direct profit is realized from or a charge made for, the privilege of dancing or for enjoying entertainment of variety programs or exhibitions. We cannot agree to this construction.

"The records in the office of the Secretary of State show that in 1939 the Legislature attempted to amend the law in this regard by the passage of House Bill No. 1906 by which the language would have been changed to read:

" 'Section 23. Every person who operates for a profit any place where dancing is permitted or entertainment such as variety programs or exhibitions is provided *for a charge* shall pay a license tax of $100.00 . . . .' (Emphasis supplied.) This enactment was vetoed by the Governor because the change in the law would reduce the revenue accruing to the State under the then existing statute."

As I read the statute, it was the legislative intent to require the $100.00 license only where dancing is permitted *for a charge* or where entertainment, such as variety programs or exhibitions, is provided for a charge.

If the legislature did not intend the amendment to dispense with the requirement of the tax except in cases where a specific charge was made for the permitting of dancing or for the entertainment specified,

the passage of the Act was a vain and useless gesture and accomplished nothing.

There is some significance to be found in the fact that there is a difference in the language used in the two statutes, *supra*. The 1937 Act uses the language, "Where dancing is engaged in" and if the legislature did not intend to make the change as contended by petitioner, that language would have been clear and all sufficient, but if it was the legislative intent to limit the application of the statute only to those places where a specific charge is made for dancing, then the language, "where dancing is engaged in" for a charge would have made the construction ambiguous, as it would have been uncertain whether the statute would have applied to places where the proprietor made a charge for the privilege of dancing, or where the dancers made a charge for entertaining by dancing. Therefore, the legislature eliminated ambiguity and made the intent clear by substituting the language, "where dancing is permitted," and, as I construe the statute added the words "for a charge."

Perhaps if the statute read "for profit" instead of "for a charge" it could be successfully contended that the increase in profit which the proprietor might acquire by allowing free dancing would be an element of profit chargeable to dancing and that, therefore, a part of the profit derived from the operation of the coin operated jook organ, or from the service of meals and drinks, as well as that from private dining rooms desired by spooning couples, or others; is derived from permitting dancing however, the legislature did not use the words "for profit" but specifically provided that the tax could only be required where dancing is permitted for a charge.

A cardinal, elementary and universally recognized principle applicable to the construction of taxing statutes is that every doubt must be resolved in favor of the tax-payer.

It appears to me that the conclusion must necessarily be that unless a specific charge is made by the proprietor for the privilege of dancing, the license of $100.00 is not required.